EDWARD C. McNULTY, Plaintiff, *v.* W. & J. SLOANE, Defendant.

Supreme Court, Special Term, New York County, March 3, 1945.

*Charles Goldenberg* for plaintiff.

*Archie O. Dawson* and *Henry Bruckner, Jr.,* for defendant.

SHIENTAG, J. There are two questions raised on these motions. The first is whether section 36 of the Stock Corporation Law of the State of New York, as amended by chapter 600 of the Laws of 1943, is constitutional. Did the Legislature have the power to authorize a corporation, by a vote of the holders of two thirds of each class of stock, to amend its certificate of incorporation, to provide for a reclassification of its shares in such a way as to eliminate cumulative preferred dividends which have accrued but which have never been declared? Any stockholder not agreeing to the plan of reclassification is given the opportunity to dissent therefrom and to be paid the appraised value of his stock in cash under the provisions of subdivision 9 of section 38 of the Stock Corporation Law. (See Stock Corporation Law, §§ 21, 36, subd. [E]; § 37, subd. 3, par. [c]; § 38, subd. 9.)

The second question is whether, assuming the constitutionality of the amendment, it applies to dividends which have accrued

before as well as after its enactment (but which have not been declared).

The defendant was incorporated under the laws of the State of New York in 1891. Plaintiff is the holder of 20 shares of the prior preferred stock and 120 shares of preferred stock acquired by him in January, 1944, after the amendment we are considering went into effect. He did not vote against the plan at the stockholders' meeting which he attended and filed no dissent or demand for appraisal of his stock. In this suit he tests the validity and the applicability of the amendment to section 36 of the Stock Corporation Law insofar as his stock is concerned.

The amendment to section 36 became effective October 1, 1943, and so far as is here pertinent is set forth in the footnote.[1] It is clearly expressed and it refers specifically to the creation, alteration or abolition of any provisions or rights in respect of " any cumulative or non-cumulative dividends, whether or not accrued, which shall not have been declared " (§ 36, subd. [E], clause [b]).

It is unnecessary to discuss in any detail the former financial structure of the defendant corporation, the changes made by the plan of reclassification and the reasons given therefor. Suffice it to say that the holder of each share of 6% cumulative prior preferred stock received in exchange for such share, including all accumulated dividends, $125 par value of new cumulative 4½% prior preferred stock and one-half share of new common stock. The holder of each share of 6% cumulative preferred stock received in exchange for such share, including all accumulated dividends, $100 par value of the new non-

---

[1] " § 36. *Changes in respect to shares, capital stock or capital.* A stock corporation may effect one or more of the following purposes: ⠀ ⠀ ⠀ (E) To classify or reclassify any shares, whether with or without par value. The creation, alteration, or abolition, in whole or in part, of designations, preferences, privileges or voting powers of any shares previously authorized, or the restrictions or qualifications thereof (including the creation, alteration or abolition of any provisions or rights in respect of (a) the redemption of any shares, or (b) any cumulative or non-cumulative dividends, whether or not accrued, which shall not have been declared, or (c) any accumulated but unexpended instalment of any sinking fund whether or not set aside for the redemption or purchase of any shares, or (d) any preemptive right to subscribe for shares or other securities of the corporation whether existing at law or contained in the certificate of incorporation or other certificate filed pursuant to law), shall be deemed to be a classification or reclassification of such shares for the purpose of this section and of section thirty-seven and fifty-one, if effected under this paragraph (E) or paragraph (D) or by a reduction in the par value of such shares under paragraph (B) ".

cumulative 5% preferred stock and one and one-half shares of new common stock. The holder of each share of common stock received one share of the new common stock. As of May 31, 1944, undeclared dividends had accumulated on the old prior preferred stock to a total of $1,127,875 or about $62.50 per share and on the preferred stock to a total of $2,640,000 or $66 a share.

Under the plan of reclassification, holders of the new prior preferred stock received the right to vote, which they did not have before, and they also were given control of the board of directors in the event that dividends on their stock were two years in arrears. The holders of the new preferred stock received the right to vote, which gave them, together with the common shares which they received, voting control of the company.

At the special meeting of stockholders held pursuant to notice on October 31, 1944, to consider and take action on the plan of recapitalization, the vote of each class of stockholders was as follows: Of the 18,046 issued and outstanding shares of prior preferred stock, 17,927 voted in favor of the plan and none against; of the 40,000 issued and outstanding shares of preferred stock, 39,613 voted in favor and none against; and of the 59,062 shares of common stock, 58,357 voted in favor and none against.

Accordingly a certificate of amendment of the certificate of incorporation, embodying the plan of reclassification, was filed in accordance with the requirement of section 36 of the Stock Corporation Law; the corporation has been proceeding in accordance therewith and has declared and paid dividends on the new and reclassified stock. The various steps taken by the defendant to amend its certificate of incorporation complied fully with the requirements of the amended section.

Is the 1943 amendment to section 36 constitutional? Does it apply where dividends have accumulated before the amendment became effective but have never been declared? The answer to these questions depends largely on what we conceive to be the nature of a stockholder's right to dividends which have accumulated but have not been declared. Going back to a bit of ancient history, we encounter the famous *Dartmouth College* case (*Dartmouth College* v. *Woodward*, 4 Wheat. [U. S.] 518). In that case, decided in 1819, the Supreme Court of the United States held that a corporate charter constituted a contract between the State and the corporation which could not be altered or changed by the State. The implications of that decision created quite a stir and practically every State thereafter, adopting the suggestion made by Mr. Justice STORY in his concurring opinion,

reserved by constitutional provision or statute or both the power to alter or amend the charters of corporations thereafter created. Our own State Constitution provides in section 1 of article X for the formation of corporations and then goes on to say, " All general laws and special acts passed pursuant to this section may be altered from time to time or repealed." (derived from N. Y. Const. of 1894, art. VIII, § 1, N. Y. Const. of 1846, art. VIII, § 1; see, also, N. Y. Const. of 1821, art. VII, § 9). Section 5 of the General Corporation Law provides: " The charter of every corporation shall be subject to alteration, suspension and repeal, in the discretion of the Legislature." These provisions of the New York State Constitution and of the General Corporation Law govern the decision as to the constitutionality of any amendment to the Stock Corporation Law. (*Lord* v. *Equitable Life Assur. Society*, 194 N. Y. 212.) This power to amend is, to be sure, at all times subject to the fundamental mandate that property shall not be taken without due process of law. The corporation, under the " reserved power," cannot be deprived of its property nor can the rights of third parties be taken away. (*Rochester & C. Turnpike Road Co.* v. *Joel*, 41 App. Div. 43; *People* v. *O'Brien et al.*, 111 N. Y. 1.) " The authority of a state under the so-called reserved power is wide; but it is not unlimited. The corporate charter may be repealed or amended, and, within limits not now necessary to define, the interrelations of state, corporation and stockholders may be changed; but neither vested property rights nor the obligation of contracts of third persons may be destroyed or impaired." (*Coombes* v. *Getz*, 285 U. S. 434, 441.)

There are some States which view this " reserved power " narrowly, and hold that it does not cover contract relations between the stockholders themselves. But the courts of New York, in line with the majority view in this country and with decisions of the Supreme Court of the United States, have given to it a broad meaning. Our courts have held generally that the " reserved power " extends not only to the contract between the corporation and the State but to the contract between the corporation and the stockholders or between the stockholders *inter sese*. " According to the majority view, all the elements of the contract between the shareholders with reference to their interest in the corporation and to its internal management may be altered by amendment to the charter, as being within the conditions upon which the State grants the privilege of corporate existence." (Curran on Minority Stockholders and the Amendment of Corporate Charters, 32 Mich. L. Rev. 743. 750.) This

view finds support in the leading case of *Hinkley* v. *Schwartz-schild & S. Co.* (107 App. Div. 470, 478, 480–481) where the court said: " Within this power under this rule must necessarily fall the right to change the capital stock of the corporation as to amount, kind and classification. In effect it must be deemed to exhibit the policy of the state adopted to promote the corporate purpose, enhance its welfare, and extend its business. \* \* \* it must follow that mere interference with rights secured by contract as between individual incorporators and stockholders is no answer to the right of the State in the interest of the public good and in the regulation of private corporations by general law to exercise such right under the reserved power." In *Colby* v. *Equitable Trust Co.* (124 App. Div. 262, affd. 192 N. Y. 535) the court rejected the contention of a stockholder that the Legislature had no power to sanction the merger of corporations against the protest of minority stockholders unless such merger were lawful when the corporations were formed. The broadness of the scope of the reserved power is assumed in such cases as *Davison* v. *Parke, Austin & Lipscomb, Inc.* (285 N. Y. 500), *Looker* v. *Maynard* (179 U. S. 46), *Matter of Silberkraus* (250 N. Y. 242), *Hottenstein* v. *York Ice Machinery Corporation* (136 F. 2d 944) ; and *Zobel* v. *American Locomotive Co.* (182 Misc. 323).

So that, at a comparatively early date in this State the cases emphasized not so much the question of whether the Legislature had power to act, as whether or not that power had in fact been exercised by the Legislature. It was in connection with such decisions, however, that the expression " vested rights " was employed, which for many years created much confusion and tended to obscure the proper legal approach. Prior to 1943 various attempts were made by corporations in this State to amend their certificates of incorporation to provide for the abolition of accrued but undeclared dividends. In 1906, in *Roberts* v. *Roberts-Wicks Co.* (184 N. Y. 257) (the leading case in this country on the subject), the Court of Appeals declared that the Stock Corporation Law in force at that time did not authorize a corporation to eliminate accumulated dividends on preferred stock through the procedure of a reduction of capital stock. The court based its decision not alone on the absence of any specific statutory power to do this, but indicated that the right to accumulated dividends was a " vested right " which could not be interfered with. (See *Harbine* v. *Dayton Malleable Iron Co.*, 61 Ohio App. 1; contra, *McQuillen* v. *National Cash Register Co.*, 27 F. Supp. 639, affd. 112 F. 2d 877; in Ohio, the

statute was amended after the decision in the *Harbine* case [*supra*], amendment to General Code, § 8623–14, subd. [1], eff. July 24, 1939.)

Without going into other cases along the same lines, it suffices to point out that in 1941, in *Wiedersum* v. *Atlantic Cement Products, Inc.* (261 App. Div. 305) the Appellate Division of the Second Department held that a reclassification of stock under section 36 of the Stock Corporation Law, as then in effect, would not permit the cancelation of cumulative accrued dividends. While the court referred to the absence of legislative authority, we again find that it stressed the term " vested rights " as relating to cumulative but undeclared dividends. (See, also, *Breslav* v. *N. Y. & Queens Elec. Light & Power Co.,* 249 App. Div. 181, affd. 273 N. Y. 593; *Yoakam* v. *Providence Biltmore Hotel Co.,* 34 F. 2d 533, 546; *Albrecht, McGuire & Co., Inc.,* v. *General Plastics, Inc.,* 256 App. Div. 134, 138, affd. 280 N. Y. 840.)

Decisions in other States and scholarly law review articles pointed out that the term " vested right " in connection with the problem we are considering was, to use the language of Mr. Justice CARDOZO, a " deceptive label." To characterize dividends, accumulating through lapse of time, but never declared, as a " vested " interest is but to argue from a conclusion. (Dodd on Dissenting Stockholders and Amendments to Corporate Charters, 75 U. of Pa. L. Rev. 585, 723; 25 Corn. L. Q. 431.) In fact, in this State, as DESMOND, J., stated in *Davison* v. *Parke, Austin & Lipscomb, Inc.* (285 N. Y. 500, 509), decided some months after the *Wiedersum* case (*supra*), that the Stock Corporation Law, prior to the amendment of 1943, contemplated " the alteration of certain preferential rights of stockholders under their contracts, subject only to the dissenting stockholder's right of appraisal." He referred to the fact that new stock may be issued with preferential rights to the assets of the corporation upon dissolution and to dividends superior to the preferential rights of the then outstanding shares (*Matter of Dresser,* 247 N. Y. 553), even superior to the right of preferred stockholders to dividends in arrears. (*Matter of Duer,* 270 N. Y. 343; see, also, *Matter of Silberkraus,* 250 N. Y. 242, *supra; Matter of Kinney,* 279 N. Y. 423.) " Vested right " was indeed a term susceptible of many shades of meaning, a term which had not been clearly defined in the cases. Whenever the court was of the opinion that certain rights of stockholders could not be interfered with, they characterized those rights as " vested." The doctrine of vested rights was found to be inadequate as a general test.

The law on this point was clarified in the *Davison* case (*supra*). DESMOND, J., speaking for a unanimous court, said (p. 509): " So it seems that only confusion results from saying that ' vested rights ' are not within the contemplation of the statute. All preferential rights of stockholders are in a sense vested. They are all property rights founded upon contract. \* \* \* The judicial problem is not whether a particular preferential right is vested or not, but rather what was the legislative intent as to it." [2]

It is obvious that the right to accumulated dividends accrued by lapse of time but not declared, is not in the nature of a debt. There is no debt until the dividend has been declared. The only effect of a provision for accumulated dividends in a certificate of incorporation is to restrict the corporation from declaring dividends on other classes of stock until the cumulative dividends have been declared and paid. This is a preferential right and a valuable one. It does not, however, give rise to a chose in action which could be alienated or devised. It is not a property right in the sense that it exists separate and apart from the certificate. (Ballantine on Private Corporations, p. 526; Kehl on Corporate Dividends, p. 214.) No preferred stockholder has a right to demand that dividends be paid him merely because a period of time has elapsed. The directors, before declaring any dividends, must take into consideration

---

[2] The confusion which arises from considering a stockholder's right to undeclared accrued cumulative dividends as a property right protected by constitutional guarantees is illustrated by what has happened in Delaware. In *Keller et al.* v. *Wilson & Co., Inc.* (21 Del. Ch. 391) the Supreme Court of Delaware held that the statute did not allow abolition of accrued cumulative dividends; and went on to say that these are property rights which are protected by constitutional guarantees. (See, also, *Consolidated F. I., Inc.,* v. *Johnson,* 22 Del. Ch. 407.) Several years later the same court held that cumulative dividends which had accrued through the passage of time could be extinguished by a corporation through the device of a merger with its wholly owned subsidiary. (*Federal United Corporation* v. *Havender,* 11 A. 2d [Del.] 331.) The inconsistency in this position was promptly brought to light in two recent cases in the Federal court arising under the Delaware statute. (*Hottenstein* v. *York Ice Machinery Corporation,* 136 F. 2d 944, *supra; Goldman* v. *Postal Telegraph,* 52 F. Supp. 763.) So far as Delaware is concerned, therefore, accrued cumulative dividends cannot be abolished through a reclassification of the stock, but this is solely because the Legislature has not specifically granted this privilege to a corporation. When the statute afforded such an opportunity, as in the merger statutes, accrued dividends could be abolished. (See Accrued Dividends in Delaware Corporations — From Vested Right to Mirage, 57 Harv. L. Rev. 894; see, also, as emphasizing " vested rights " in accrued but undeclared dividends, *Buckley* v. *Cuban American Sugar Co.,* 129 N. J. Eq. 322; *Patterson* v. *Hosiery Mills,* 214 N. C. 806.)

not only the earnings, but also the business needs, of the corporation.

The contract between stockholders *inter sese* is not an unconditional contract. It is a contract subject to a condition that it may be changed or altered in the manner prescribed or authorized by the Legislature. Of course, if a right to a specific sum of money has accrued, this right would be preserved against impairment by the constitutional provision protecting property, but that is because this property right then exists separate and apart from and in addition to the contract. The very essence of the reserved power of the Legislature is to enable it to change preferential rights of the different classes of stock in a corporation. Subdivision 9 of section 38 of the Stock Corporation Law recognizes this, for it provides that if a certificate of amendment " * * * alters * * * any preferential right of any outstanding shares, * * * any holder of any such shares not in favor of such action * * * " may file a written dissent and have his stock appraised and paid for.

The Court of Appeals, when it considered this question in *Davison* v. *Park, Austin & Lipscomb, Inc.*, (285 N. Y. 500, *supra*), held that the Legislature, notwithstanding the decision in *Roberts* v. *Roberts-Wicks Co.* (184 N. Y. 257, *supra*) had, in subsequent amendments, failed specifically to authorize the reclassification of stock so as to eliminate accrued but undeclared cumulative dividends, and that in the absence of such specific authorization the corporation had no power to do so. The Legislature responded to this decision by enacting the 1943 amendment to section 36 of the Stock Corporation Law.

The importance of this problem from a legal, a financial and an economic standpoint is reflected in the many scholarly articles in law reviews in recent years concerning it.[3] The courts have realized that the problem was a knotty one and that it involved important questions of public policy. On the

[3] In addition to those referred to in the opinion and in note 2, the following may be cited: Corporations — Accrued preferred dividends in Wisconsin (1943) Wis. L. Rev. 417; Corporations — Dividends — Elimination of accrued preferred dividends by charter amendment, 26 Minn. L. Rev. 387; Corporations — Reorganization of Capital Structure — Nature of Vested Rights, 19 N. Y. U. L. Q. Rev. 196; Elimination of Accrued Dividends in Corporate Reconstruction, 89 U. of Pa. L. Rev. 789; Becht on the Power to Remove Accrued Dividends by Charter Amendment, 40 Col. L. Rev. 633; Security and Exchange Commission, Report on study and investigation of the work, personnel and functions of protective and reorganization committees (1938); Corporate Recapitalization by Charter Amendment, 46 Yale L. J. 985; Corporations: Constitutional law: Power of state to permit an amendment to articles, 14 Corn. L. Q. 85.

one hand, there was the interest of the State, in the welfare of corporations organized under its sanction, in permitting them a certain flexibility in their capital structure to meet business and financial needs; on the other hand there was the concern to protect the rights of small investors, chargeable with an unrealistic, constructive knowledge of the " reserved power " of the Legislature.

There was the possibility of improper domination by large stockholders to be weighed against the power of a small stockholder to force the majority to buy his stock at exorbitant prices and to threaten to use his voting rights in such a way as to injure the business of the corporation and thus impair the rights of others. There was the necessity for allowing financial rejuvenation and at the same time there was the realization that there might result the possible enrichment of a junior class of stockholders at the expense of a senior class. In short, the problem was one of balancing intertwining and conflicting interests and of determining what was conducive to the good of society. Such a problem, involving as it does, questions of sound public policy, is primarily for the Legislature and not for the courts.

With the wisdom of legislation permitting the abolition of accrued cumulative but undeclared dividends the court can have no concern. That is the province of the lawmaker and we cannot say that there is no reasonable basis for the law that was passed.

Differences of opinion there may reasonably exist as to whether the legislation, in the form in which it was enacted, is adequate for the purpose sought to be accomplished or whether there are sufficient safeguards surrounding a measure so fraught with danger and so susceptible to abuse. Some may say that supervision should have been given to an administrative agency; others that prior judicial approval should have been required; but these likewise are matters of legislative rather than judicial concern. The Legislature sought to guard against possible evil consequences by requiring a sufficient notice to stockholders, and a vote by the holders of record of two thirds of the outstanding shares of each class of stock and by giving dissenting stockholders the right to an appraisal of their holdings and payment for them in cash. (See Stock Corporation Law, §§ 21, 36, subd. [E]; § 37, subd. 3, par. [c]; § 38, subd. 9. See, also, Lattin on Remedies of Dissenting Stockholders under Appraisal Statutes, 45 Harv. L. Rev. 233; 36 Col. L. Rev. 674, 675.) There also exists the inherent power of a court of equity, a power

limited generally to the test of good faith rather than a test objective in character, a power the exercise of which may be circumscribed, because too often what is an accomplished fact is presented to the court; but it is a significant, restraining influence nevertheless. (*Shanik* v. *White Sewing Machine Corporation*, 19 A. 2d 831 [Del.]; *Kreicker* v. *Naylor Pipe Co.*, 374 Ill. 364; *Johnson* v. *Lamprecht*, 133 Ohio St. 567; *Matter of Duer*, 270 N. Y. 343, *supra;* Dodd on Fair and Equitable Recapitalizations, 55 Harv. L. Rev. 780.)

Is the amendment limited to dividends which shall accrue after its effective date? I think not. It seems clear that the act was intended to apply also to cumulative dividends which accrued, through lapse of time, prior to the effective date of the amendment. The act specifically provides that a corporation may abolish cumulative 'dividends, whether or not accrued, which shall not have been declared. If it had been intended to relate only to dividends which accrued subsequent to the passage of the act, this limitation could easily have been expressed. In interpreting statutes, courts " should construe the statutory language as the average business man would read and understand it " (*Randall* v. *Bailey*, 288 N. Y. 280, 287).

In construing a statute, moreover, great weight is given to the purpose that it is intended to accomplish. The amendment was designed to relieve the plight in which many corporations found themselves through the accumulation, in the course of many years, of substantial amounts of accrued but undeclared dividends. A cumulative dividend which has accrued is, as a matter of definition, something which has developed in the past. To construe the statute in the sense contended for by the plaintiff would render it in large measure ineffective. Here, likewise, we are confronted not with any question of legislative power, but with a question of the intention of the Legislature. It is no more unconstitutional to permit the Legislature, under the reserved power, to authorize a corporation to abolish dividends which have accrued in the past, than it is to authorize a corporation to abolish dividends which may accrue in the future. There is a difference in degree, but not one of kind. In both cases there is interference with a contractual relationship between stockholders and the corporation or between the stockholders *inter sese*. But this the Legislature is permitted to do, certainly under the reserved power in the Constitution and in the General Corporation Law, to alter or amend the charters of corporations, if not under the inherent power of the State for the preservation of the general welfare.

In view of the foregoing, it is unnecessary to consider two additional points made by the defendant: (1) that plaintiff acquired his stock after the 1943 amendment to section 36 of the Stock Corporation Law went into effect; (2) that he is guilty of laches and is now estopped from questioning the legality of the reclassification plan because he failed to vote against it, although present at the stockholders' meeting, and neither at that meeting nor at any time prior or subsequent thereto, until the institution of this suit, did he make any objection to it.

The 1943 amendment to section 36 of the Stock Corporation Law is constitutional; it affects all stockholders, whether they acquired their shares prior or subsequent to its enactment; it relates to dividends accumulated and accrued (but not declared) before and after the amendment took effect.

Both sides have moved for summary judgment and have stated that only questions of law are presented. That is so. Accordingly, the defendant's motion for summary judgment dismissing the complaint, based as it is upon documentary evidence and matters of official record, is granted; the plaintiff's motion for summary judgment and for judgment on the pleadings is denied. Settle order.