WILLIAM C. ANDERSON, Suing on Behalf of Himself and Other Stockholders Similarly Situated, Appellant, *v.* INTERNATIONAL MINERALS & CHEMICAL CORPORATION, Respondent.

Argued March 6, 1946; decided May 29, 1946.

*George W. Whiteside, Leonard P. Moore* and *Henry D. Bulkley* for appellant. I. Accumulated dividends on plaintiff's 500 shares of prior preference stock constituted an outstanding obligation at the time of consolidation which could be satisfied only by payment in full. Plaintiff's rights are contractual. (*Roberts* v. *Roberts-Wicks Co.*, 184 N. Y. 257; *Strout* v. *Cross, Austin & Ireland Lumber Co.*, 283 N. Y. 406; *Patterson* v. *Durham Hosiery*

*Mills,* 200 S. E. 906.) II. Plaintiff's right to payment of accrued dividends cannot be destroyed. (*Roberts* v. *Roberts-Wicks Co.,* 184 N. Y. 257; *Breslav* v. *New York & Queens Electric L. & P. Co.,* 249 App. Div. 181, 273 N. Y. 593; *Albrecht, Maguire & Co., Inc.,* v. *General Plastics, Inc.,* 280 N. Y. 840; *Strout* v. *Cross, Austin & Ireland Lumber Co:,* 283 N. Y. 406; *Wiedersum* v. *Atlantic Cement Products, Inc.,* 261 App. Div. 305; *Davison* v. *Parke, Austin & Lipscomb, Inc.,* 285 N. Y. 500.) III. Section 91 of the Stock Corporation Law did not by its terms authorize cancellation of plaintiff's accumulated dividends otherwise than by payment in full. (*Roberts* v. *Roberts-Wicks Co.,* 184 N. Y. 257; *Breslav* v. *New York & Queens Electric L. & P. Co.,* 249 App. Div. 181, 273 N. Y. 593; *Albrecht, Maguire & Co., Inc.,* v. *General Plastics, Inc.,* 280 N. Y. 840; *Strout* v. *Cross, Austin & Ireland Lumber Co.,* 283 N. Y. 406; *Wiedersum* v. *Atlantic Cement Products, Inc.,* 261 App. Div. 305; *Davison* v. *Parke, Austin & Lipscomb, Inc.,* 285 N. Y. 500.) IV. The payment of past due cumulative dividends is an " obligation " of the corporation under section 90 of the Stock Corporation Law.

*Orison S. Marden* and *Glover Johnson* for respondent. I. All rights represented by the old preference stock in the constituent domestic corporation which plaintiff owned, including all accumulated dividends thereon, for the past as well as the future, were merged into the securities of the continuing corporation. Accumulated dividend arrears may be compounded upon a merger. (*Federal United Corp.* v. *Havender,* 11 A. 2d 331; *Keller* v. *Wilson & Co., Inc.,* 190 A. 115; *Porges* v. *Vadsco Sales Corp.,* 32 A. 2d 148; *Hottenstein* v. *York Ice Machinery Corp.,* 136 F. 2d 944; *Hubbard* v. *Jones & Laughlin Steel Corp.,* 42 F. Supp. 432; *Beechwood Securities Corp.* v. *Associated Oil Corp.,* 104 F. 2d 537; *Zobel* v. *American Locomotive Co.,* 182 Misc. 323; *Colby* v. *Equitable Trust Co.,* 124 App. Div. 262, 192 N. Y. 535; *McNulty* v. *W. & J. Sloane,* 184 Misc. 835; *Alpren* v. *Consolidated Edison Co. of New York, Inc.,* 168 Misc. 381.) II. Section 90 of the Stock Corporation Law, dealing with rights of creditors, has no application here. Stockholders are not creditors. (11 Fletcher on Corporations, § 5321; *Godley* v. *Crandall & Godley Co.,* 212 N. Y. 121; *McNulty* v. *W. & J. Sloane,* 184 Misc. 835; *Heyn* v. *Fidelity Trust Co.,* 197 A. 292.)

THACHER, J. We are concerned in this case with the merger and consolidation of International Agricultural Corporation, a New York corporation, and Union Potash & Chemical Company, a Colorado corporation. These companies were consolidated pursuant to section 91 of article 8 of the New York Stock Corporation Law, and the defendant, International Minerals & Chemical Corporation, organized under the laws of the State of New York, is the consolidated or continuing company resulting from the merger of the two constituent companies.

The plaintiff, William C. Anderson, owner and holder of 500 shares of 7% prior preference cumulative stock of International Agricultural Corporation, did not vote his stock for or against the merger and consolidation nor was he present or represented by proxy at the meeting of the shareholders of this company on March 30, 1942, when resolutions were adopted by the vote of more than two thirds of the issued and outstanding shares of each class of stock. These resolutions authorized the consolidation and merger of the two companies upon the terms set forth in the certificate of consolidation and agreement of merger. It was provided therein that each share of the 7% prior preference cumulative stock of International Agricultural, including all accumulated and unpaid dividend arrears thereon, was converted into one share of the 4% cumulative preferred stock and three and one-half shares of the common stock of the continuing corporation. At the time of the consolidation these dividend arrears aggregated $95 per share. The holders of the original common stock were to receive for each share of the old stock held by them one fourth of one share of new common stock. Action authorizing the consolidation and merger was taken by the Union Potash & Chemical Company as permitted by and in compliance with the laws of Colorado and also in compliance with section 91 of article 8 of the New York Stock Corporation Law. The merger and consolidation were consummated by filing the certificate of consolidation with the Secretary of State of New York and by filing the agreement of merger with the Secretary of State of Colorado.

Plaintiff received notice of the special meeting, presenting the details of the proposed consolidation and merger, more than five weeks before the meeting, a follow-up notice ten days before the meeting and knew of the consolidation proceeding at all times.

On April 7, 1942, the day after the consolidation was consummated by filing certificates of consolidation with the Secretaries of State in the two States, plaintiff was requested to present his old shares for exchange for the new shares. On June 1, 1942, a dividend of a $1 per share upon the new cumulative preferred stock was declared and plaintiff was again requested to present his old stock for exchange. On June 30, 1942, plaintiff received a similar request advising him that there had been forwarded under separate cover a check in the amount of $1 per share covering the first quarterly dividend on the 4% cumulative preferred stock to which he was entitled. This check was received, indorsed and cashed for plaintiff's account.

Subdivision 7 of section 91 of article 8 of the Stock Corporation Law provides that " Any stockholder of a domestic corporation included in such consolidation, not voting in favor thereof, may object to such consolidation and demand payment for his stock, at any time prior to the vote * * *. The objecting stockholder or the corporation shall have the right to have such stock appraised and paid for in the manner provided, and subject to the conditions imposed by section twenty-one. * * *"

Plaintiff never made demand under these provisions of the law and did not object to the proposed consolidation until almost three months after the first dividend check on the new 4% cumulative preferred stock had been received and cashed for his account. Under date of September 22, 1942, plaintiff wrote the following letter to the defendant corporation:

" I have just returned from the country where I have been since the latter part of June. I have just learned that in my absence a check for $500.00 was mailed to me purporting to be a dividend on shares of 4% cumulative preferred stock of your corporation. I have further learned that without any knowledge on my part and without any authorization from me said check was deposited in my account.

" Please be advised that I do not own any of the shares on which the check above mentioned purports to be a dividend and I therefore return herewith my check for $500.00 to the order of your company in repayment of the amount mistakenly sent me and deposited in my account in error while I was away."

Thereafter this action was commenced. The amended complaint alleges that plaintiff is the owner and holder of 500 shares

of the 7% prior preference cumulative stock, acquired during the years 1931 and 1932 and held and owned by him at all times since; that at the time of the consolidation and merger there were accumulated and unpaid dividends on the 7% prior preference cumulative stock of approximately $95 a share; that under the terms of the consolidation holders of the 100,000 shares of 7% prior preference cumulative stock were to receive in place of each of their shares and the accumulated dividends thereon one share of 4% cumulative preferred stock and three and one half shares of common stock of the consolidated corporation, and that upon receipt of the new securities the right to accumulated dividends amounting to $47,500 on plaintiff's 500 shares was to be cancelled and extinguished. The relief prayed for includes a request for judgment that defendant's action was void and unenforcible as to accumulated dividends on plaintiff's shares and similar shares of others who come in and contribute to the expense of the action and that such dividends be paid to plaintiff and others participating with him in the lawsuit. Injunctive relief is also requested against paying any dividends on any stock of the consolidated corporation until plaintiff and others participating have been paid the accumulated dividends on their 7% prior preference shares of the International Agricultural Corporation shares.

Plaintiff relies upon decisions in cases involving the reclassification of shares under article 4 of the Stock Corporation Law prior to its amendment in 1943 (L. 1943, ch. 600) and particularly upon *Davison* v. *Parke, Austin & Lipscomb, Inc.* (285 N. Y. 500) where we held that sections 36 and 38 of that article, before their amendment, did not confer power to deprive preferred shareholders of accumulated dividends without their consent. Under those sections of the law the right of a shareholder to object to a reclassification of capital stock and demand an appraisal was quite restricted (*Matter of Kinney,* 279 N. Y. 423; *Matter of Duer,* 270 N. Y. 343; *Matter of Dresser,* 247 N. Y. 553; cf. *Matter of Silberkraus,* 250 N. Y. 242). The reclassification provisions of the statute as then written did not contemplate or expressly provide for reclassification which deprived shareholders of accumulated dividends. The reclassification provided for, therefore, presented problems very different from the problems of reorganization and merger which necessarily involve exchange

of shares in an old company, with all their rights, for new shares with new rights in a new company. Our decision in the *Davison* case (*supra*) dealing with reclassification under the statute, before its amendment, went upon the failure of the statute to provide for a reclassification of shares which involved surrender of accumulated dividends. As a result of this decision the statute was amended to so provide.

In this case we are dealing with the provisions of the New York Stock Corporation Law having to do with merger and consolidation (art. 8). These provisions differ in language, purpose and subject matter from article 4 relating to the reclassification of shares under which the cases arose upon which plaintiff relies. The whole process of merger and consolidation rests upon the principle of permitting consolidations approved by two thirds of the shareholders which in the absence of Statute would require the consent of all and permitting dissenters, not wishing to go along, the opportunity to have their shares appraised and to retire from the enterprise upon payment to them of the appraised value of their shares. It is important to note that the provisions of subdivision 7 of section 91 of article 8 give to every dissenting stockholder included in the consolidation the right to object and demand payment for his stock and to have the same appraised and paid for in the manner provided and subject to the conditions imposed by section 21. Section 21 expressly provides: "Before receiving payment such stockholder shall surrender to the corporation his certificate of stock. When the corporation shall have paid the amount of such appraisal, as directed by the court, such stockholder shall cease to have any interest in such stock and in the corporate property of such corporation and such stock may be held or disposed of by such corporation."

The purpose of section 21 of the Stock Corporation Law was to protect dissenting shareholders, and the process of appraisal was designed to meet two evils which arose because of limitations upon the powers of majority shareholders to bind the minority to a course of action beyond the powers of the majority, which might well be greatly to the advantage of those engaged in a corporate enterprise. These two evils are well stated in *Matter of Timmis* (200 N. Y. 177, at p. 181), dealing with an analogous Statute:

" (1) The injustice to the bulk of the stockholders from want of power in a corporation to sell its business or an essential part thereof to another corporation organized for the purpose, frequently from its own membership, on terms deemed advantageous by the holders of a large majority of the stock. (2) The injustice to minority stockholders of requiring them to abandon, change or limit their business if the majority should have the power to direct such a sale. An incidental evil was the power of a dissenting stockholder to compel the majority to buy him out on his own terms in order to secure unanimous consent with no one left to question the transaction.

" These evils could be remedied only by legislation, for the courts cannot provide against inherent defects in the creation of corporations. * * * This legislation was designed to meet the evils pointed out by the courts by enabling a majority of two-thirds to sell if they deemed it was the best policy, and at the same time to protect the minority, if they regarded the sale as opposed to their interests."

The remedy of appraisal and payment was intended to afford fair and just compensation to the dissenters and at the same time provide the method by which their objections could be fairly composed so as to enable the consolidation to proceed. This is plainly one of the cases in which it was intended that the rights of the dissenting minority should be surrendered, subject only to their right, secured by the statute, to fair and just compensation. No other construction of the statute is compatible with the accomplishment of its purpose. The care with which the Legislature provided in such cases that any stockholder included in the consolidation can have such compensation indicates quite clearly that every right of a dissenting shareholder is to be appraised and paid for. Since consolidation necessarily imports the retirement of the stock of the constituent companies and the issuance of new shares representing the capital of the consolidated company, the old stock with all its rights and privileges is necessarily retired and the shareholders participating in the consolidation become entitled to the shares of the new corporation under the terms and conditions of the certificate of consolidation. If, proceeding in accordance with the statute, the consolidation is duly con-

summated, there are but two alternative rights which survive to the holders of the old shares: to take the new shares upon the terms and conditions of consolidation or to take the value of the old shares determined in accordance with section 21. The plaintiff here insists that he may demand the dividends accumulated upon his stock and at the same time take the new shares of the consolidated company. This of course is quite contrary to the provisions of the certificate of consolidation which provides for the issuance of one share of new 4% cumulative preferred stock and three and one-half shares of new common stock of the consolidated corporation in exchange for each share of the 7% prior preference cumulative stock of the constituent New York corporation, International Agricultural Corporation. Of course none of the other shareholders has agreed to any such basis of consolidation as the plaintiff demands and his demand is destructive of the whole statutory process.

The plaintiff attempts to support his position by reference to section 90 of the Stock Corporation Law which deals with rights of creditors of consolidated corporations. Quite obviously there is no merit in this contention, for the right to accrued dividends, accrued merely by the lapse of time and not yet declared, is not a debt or a claim enforcible against the corporation (*Godley* v. *Crandall & Godley Co.,* 212 N. Y. 121, 128; *McNulty* v. *W. & J. Sloane,* 184 Misc. 835, 842).

The interpretation of the statute being clear, no question arises as to its constitutional validity since the plaintiff acquired his stock in International Agricultural Corporation, a New York corporation, during the years 1931 and 1932. It is true that section 91 authorizing the consolidation of domestic with foreign stock corporations was added by Laws of 1934, chapter 611, section 1, effective May 14, 1934, but similar provisions for merger and consolidation of two or more domestic business corporations had been on the statute books since the enactment of section 8 of the Business Corporations Laws of 1909 and these provisions had been derived from section 14 of the Business Corporation Law of 1890. Thus whatever rights the plaintiff acquired as a stockholder in 1931 and 1932 were subject to the provisions for appraisal similar to those which he now attacks as invalid. Indeed, the constitutionality of such provisions had been con-

sidered and determined by this court as early as 1918 (*Logan* v. *New Amsterdam Gas Co.*, 224 N. Y. 664) and similar questions arising under the Banking Law were decided in April, 1908 (*Colby* v. *Equitable Trust Co. of New York*, 192 N. Y. 535). For a precisely analogous case see *In re Interborough Consolidated Corporation* (277 F. 455).

The judgment should be affirmed, with costs.

LOUGHRAN, Ch. J., LEWIS, CONWAY, DESMOND and DYE, JJ., concur.

Judgment affirmed.