FRED J. SHERMAN v. PEPIN PICKLING COMPANY
AND OTHERS.[1]

January 13, 1950.

No. 35,012.

[1]Reported in 41 N. W. (2d) 571.

*George, Brehmer & McMahon* and *C. Stanley McMahon,* for appellants.

*John A. Burns,* for respondent.

*Alfred E. LaFrance* filed a brief as *amicus curiae* on behalf of the contention of appellants.

PETERSON, JUSTICE.

Action by a preferred stockholder of defendant corporation, hereinafter referred to as defendant, to recover the par value of 33 shares of cumulative preferred stock of $100 par value and accumulated dividends at seven percent per annum. The defense was that, pursuant to statutes in force when the stock was issued and when defendant subsequently amended its articles of incorporation, defendant by such an amendment cancelled not only the stock held by plaintiff by issuing in lieu thereof new preferred stock having a par value of $70 per share and entitled to dividends at five percent per annum beginning January 1, 1936, but also the accumulated undeclared and unpaid dividends on plaintiff's stock.

The questions for decision are:

(1) Whether, under statutes (G. S. 1913, §§ 6185 and 6193 [M. S. A. 300.45 and 300.54]) providing that (a) a corporation may amend its articles of incorporation so as to increase or decrease its

capital stock, to change the number and par value of the shares of the capital stock, or in respect of any other matter which an original certificate (articles of incorporation) of a corporation of the same kind might lawfully have contained, and (b) a corporation by its original articles of incorporation or amendment thereof may issue preferred and common stock and give such preference as it deems best to such preferred stock, a corporation organized and amending its articles of incorporation when such statutes were in force has the power as against a nonassenting preferred stockholder to amend its articles of incorporation so as to substitute for cumulative preferred stock having a par value and entitled to dividends at a stipulated rate new noncumulative preferred stock having less par value and entitled to dividends at a lesser rate; and

(2) Whether, in such a case, the corporation has the power by such an amendment to cancel dividends on the old stock, which at the time of the amendment had accrued by the lapse of time, but had not been declared.

It was in effect conceded upon the argument that if these questions stated were answered in favor of defendant it was entitled to decision here. Accordingly, the facts will be stated only insofar as they are material to these questions.

Defendant was incorporated in 1917 with a capital stock of $100,000, consisting of 500 shares of common stock with a par value of $100 and 500 shares of cumulative seven percent preferred stock with a par value of $100. The articles of incorporation provided that the preferred stock should be entitled to receive cumulative dividends at the rate of seven percent annually payable on January 1 of each year; that it should be retired at the time therein mentioned by payment therefor of its par value and accumulated dividends; and that such stock should have, upon default of payment of the stipulated dividends, certain voting and other rights. On March 26, 1934, defendant amended its articles of incorporation so as to provide, among other things, that its stock should consist of 3,000 shares, of which 1,000 shares should be common stock with no par value and 2,000 shares should be preferred stock of the par

value of $70 entitled to five percent dividends annually commencing January 1, 1936, with certain voting, redemption, and retirement rights. There was no provision that the dividends should be cumulative. At the trial below and upon the argument here, it was assumed for purposes of decision that the effect of the amendment of the articles of incorporation was an attempt to cancel the seven percent cumulative preferred stock of $100 par value and all accrued but undeclared and unpaid dividends thereon and to substitute therefor the new five percent preferred stock of $70 par value.

Plaintiff is the owner of 33 shares of the seven percent cumulative preferred stock of $100 par value issued to him or his assignors between January 26, 1918, and February 26, 1927. The 1934 amendment of the articles of incorporation was passed over plaintiff's express objection. Neither plaintiff nor his assignors ever assented thereto. On the contrary, they have repeatedly and consistently claimed and demanded their rights to the stock originally issued to them.

When defendant was incorporated and afterward until subsequent to the adoption of the amendment of its articles of incorporation, the following sections of G. S. 1913 were in force and effect:

"6185 [M. S. A. 300.45]. The certificate of incorporation of any corporation now or hereafter organized and existing under the laws of this state may be amended * * * so as to increase its capital stock, or so as *to change the number and par value of the shares of its capital stock, or in respect of any other matter which an original certificate of a corporation of the same kind might lawfully have contained, * * *.*" (Italics supplied.)

"6193 [§ 300.54]. * * * Any corporation whose original or *amended* ✓ certificate of incorporation so provides may issue and dispose of * * * preferred and common stock; and any corporation, * * * may issue its capital stock, * * * part preferred, and part common, * * * *and give such preference as it deems best to such * * * preferred stock, * * *.*" (Italics supplied.)

Defendant declared and paid the stipulated seven percent dividends on the preferred stock of $100 par value on January 1 of each

year to and including January 1, 1927, and for the year 1931, but not for the years 1928, 1929, 1930, and those subsequent to 1931. Although the amended articles provided that the five percent dividends should be payable beginning January 1, 1936, none were in fact declared or paid until November 1946, when the first such dividend was declared and paid. In 1947, two such dividends were declared and paid. Although defendant executed new certificates to plaintiff for the amount of the five percent preferred stock having a par value of $70 per share, to which he was entitled under the amendment, and tendered him checks for the dividends declared thereon at five percent, plaintiff refused to accept either the new stock certificates or the checks for the dividends thereon.

As a consequence of business reverses, defendant during the years from about 1933 to 1945 not only failed to earn any profits, but operated at a large deficit, part of which represented an unpaid bank loan. Its credit was impaired, and apparently it had become practically insolvent. Its bankers advised that it was impossible for defendant to operate in its then condition or to borrow any more money, and that some kind of reorganization should take place. In order to get into a sound condition, defendant thereupon reduced the book value of its inventory, carried its common stock at no value, and reduced the book value of its outstanding preferred stock to that fixed by the amendment of the articles of incorporation. The trial court found, as stipulated facts, that as of and prior to the amendment of the articles of incorporation in 1934 defendant was unable to retire the seven percent cumulative preferred stock plus accrued dividends "without jeopardizing the financial structure of the defendant corporation and without prejudice to its creditors"; that between the date of the amendment and June 30, 1945, it also was unable to do so; and that after the last-mentioned date it was able to do so. Plaintiff in his brief concedes that defendant was unable to pay dividends when it defaulted in the payment thereof.

Briefly, plaintiff claims that his rights to the face value of the old stock and accumulated dividends thereon are contractual; that such rights are vested; and that the amendment substituting for

such stock other preferred stock of less par value and entitled to a lesser rate of dividend and cancelling accrued dividends on the old stock is invalid as impairing such vested rights. Defendant contends that statutes in force when the corporation was organized and when it amended its articles of incorporation, authorizing it by amendment to change the preference rights of its stockholders, became part of plaintiff's contractual rights as a stockholder and qualified and conditioned them as subject to corporate action pursuant to such statutory authorization.

■ Preferred stock of a corporation is, as the words indicate, corporate stock having preference rights. It represents a contribution to the capital of the corporation and is in no sense a loan of money. Because preferred stock is stock and not a loan, preferred stockholders' rights are governed by the rules of law governing those of stockholders having preference rights and not by those governing the rights of money lenders. As said in Booth v. Union Fibre Co. 137 Minn. 7, 8, 162 N. W. 677[2]:

"* * * By general definition preferred stock is stock entitled to a preference over other kinds of stock in the payment of dividends. The dividends come out of earnings and not out of capital. Unless there are net earnings there is no right to dividends. The stockholder is still a stockholder and not a creditor. He makes a contribution to capital and not a loan. The corporation is not his debtor."

See, Dratz v. Occidental Hotel Co. 325 Mich. 699, 713, 39 N. W. (2d) 341, 346.

In the Booth case, the question was raised whether the stock certificate evidenced preferred stock or a loan. Here, there is no such question. It is undisputed that plaintiff's securities are preferred stock—it was so alleged in the complaint, and the litigation both below and here has proceeded upon the assumption that they were such in fact.

■ A dividend is a portion of the profits of a corporation declared by the board of directors of the corporation, or other governing body thereof, to be set apart and paid to the stockholders ratably

---

[2]Second appeal, Booth v. Union Fibre Co. 142 Minn. 127, 171 N. W. 307.

according to their respective interests. The declaration of a dividend involves segregating it from the property of the corporation so as to become the property of the stockholders distributively. 18 C. J. S., Corporations, § 458. The declaration of dividends involves not only the consideration of earnings, but also the business needs of the corporation. Keough v. St. Paul Milk Co. 205 Minn. 96, 285 N. W. 809; Schmitt v. Eagle Roller Mill Co. 199 Minn. 382, 272 N. W. 277. Because a corporate dividend depends upon a declaration thereof by the board of directors of the corporation, an undeclared dividend is in no sense a debt. The effect of a provision in the articles of incorporation for accumulated dividends is to restrict the corporation from declaring dividends on other classes of stock until the cumulative dividends have been declared and paid. While the preferential right is a valuable one, it has no existence apart from the stock and cannot be either alienated or devised. Mere lapse of time creates no dividend rights. "No preferred stockholder has a right to demand that dividends be paid him merely because a period of time has elapsed." McNulty v. W. & J. Sloane, 184 Misc. 835, 842, 54 N. Y. S. (2d) 253, 260. According to the undisputed facts here, there was no duty on the part of defendant, through its board of directors, when the articles of incorporation were amended and when dividends were not declared and paid, to declare and pay any dividend, for the obvious reason that defendant had no earnings, accumulated or otherwise, out of which to pay them. On the contrary, defendant was then engaged in a struggle for its very existence, which reorganization and improved business operations alone made possible.

■ At the outset of the consideration of the question whether preferred stockholders' rights may be altered, we should remember that the sole basis for the rule of law that stockholders' rights among themselves may not be altered is the rule of the Dartmouth College case (Trustees of Dartmouth College v. Woodward, 17 U. S. [4 Wheat.] 518, 4 L. ed. 629), to the effect that such rights are contractual in nature. But in that case Mr. Justice Story suggested that, where the right to amend or alter such rights is re-

served, that very thing may be done. Accordingly, the common practice ever since has been to make such a reservation either by general statute or in some other manner. Where a statute authorizes the formation of a corporation upon compliance with its provisions and the statute contains provisions reserving the right to alter by amendment the rights of stockholders, the statute becomes part of the articles of incorporation (the corporate charter) and of any stock issued thereunder as effectively as if printed therein at length, and it operates not only to confer upon the corporation reserved power to alter by amendment the rights of stockholders, but also to notify them of such reserved power. In other words, where the right to so amend is reserved, the contract between the corporation and its stockholders and among the stockholders themselves, arising from their stock ownership, is not an unconditional one, but is rather one subject to the condition that it may be changed or altered in the manner authorized by the statute. Midland Co-op. Wholesale v. Range Co-op. Oil Assn. 200 Minn. 538, 274 N. W. 624, 111 A. L. R. 1521; Blumenthal v. Di Giorgio Fruit Corp. 30 Cal. App. (2d) 11, 85 P. (2d) 580; Western Foundry Co. v. Wicker, 403 Ill. 260, 85 N. E. (2d) 722, 8 A. L. R. (2d) 878; Anderson v. International M. & C. Corp. 295 N. Y. 343, 67 N. E. (2d) 573; Longson v. Beaux-Arts Apts. Inc. 290 N. Y. 845, 50 N. E. (2d) 240; McNulty v. W. & J. Sloane, *supra;* Johnson v. Bradley Knitting Co. 228 Wis. 566, 280 N. W. 688, 117 A. L. R. 1276. Consequently, the only questions in a case such as this are whether the statute reserves the power to so amend, and whether the particular alteration or amendment comes within such reserved power. Midland Co-op. Wholesale v. Range Co-op. Oil Assn. *supra;* Davison v. Parke, Austin & Lipscomb, Inc. 285 N. Y. 500, 35 N. E. (2d) 618[3]; 26 Minn. L. Rev. 387.

[3]In the Davison case the court said (285 N. Y. 509, 35 N. E. [2d] 622): "* * * So it seems that only confusion results from saying that 'vested rights' are not within the contemplation of the statute. All preferential rights of stockholders are in a sense vested. They are all property rights founded upon contract. The right of priority in the distribution of corporate assets on dissolution is no less vested than the right to be paid dividends

A large number of cases have been cited to us, and we have read and considered not only these, but also many others, involving the construction and application of statutes differing from ours which, except for the discussion of general principles concerning which there is no dispute, shed no light on the problem here involved. These we shall neither cite nor review, because to do so would extend needlessly the scope of this opinion beyond reasonable length. See, McQuillen v. National Cash Reg. Co. (D. C.) 27 F. Supp. 639, 645 (affirmed [4 Cir.] 112 F. [2d] 877).

The statutes here involved reserve to corporations organized thereunder comprehensive power to amend and alter the rights of stockholders. Under G. S. 1913, § 6185 (§ 300.45), a corporation may change by amendment its articles of incorporation so as to increase or decrease its capital stock, to change the number and par value of the shares of its capital stock, and to include therein any provisions which a corporation of the same kind could have included originally therein. G. S. 1913, § 6193 (§ 300.54), empowers a corporation *by amendment* of its articles of incorporation, as well as by the original articles, to issue both common and preferred stock and *to give such preference to preferred stock as it deems best.* It requires no exposition to demonstrate that a corporation having such powers may by amendment of its articles of incorporation alter or change the preference rights of preferred stockholders. The power to determine by amendment of the articles of incorporation the "preference" of preferred stock includes that of determining whether preferred stockholders shall have any right to accrued,

for past years out of contingent future profits. The inadequacy of the 'vested rights' test is further demonstrated by the fact that new stock may be issued with preferential rights to the assets of the corporation upon dissolution and to dividends superior to the preferential rights of the then outstanding shares * * *, even superior to the right of preferred stockholders to dividends in arrears. * * * In these situations the dissenting stockholder is not even entitled to an appraisal of his shares under section 38 and section 21. * * * The judicial problem is not whether a particular preferential right is vested or not, but rather what was the legislative intent as to it."

but undeclared dividends, and to cancel such dividends entirely. Johnson v. Bradley Knitting Co. *supra.* Cases involving statutes differing somewhat from ours but being the same in substance support this view. McQuillen v. National Cash Reg. Co.; Western Foundry Co. v. Wicker; Anderson v. International M. & C. Corp.; McNulty v. W. & J. Sloane, 184 Misc. 835, 54 N. Y. S. (2d) 253, all *supra.*

The case of Midland Co-op. Wholesale v. Range Co-op. Oil Assn. 200 Minn. 538, 541, 274 N. W. 624, 625, 111 A. L. R. 1521, *supra,* is not contra. We there held that the power to amend does not include the power to change the nature, purpose, and character of the corporation, because the provision reserving the power to amend is explicit that the power of amendment authorizes only such an amendment as a corporation "of the same kind" could have included in its original articles, thereby expressly manifesting a limitation upon the power to amend to the effect that after the amending process has been exercised the corporation must still be of the same kind as it was before the amendment. In short, a corporation organized for purposes of merchandising cannot be converted by amendment into one for mining, railroading, banking, insurance, and so on. As said in Mower v. Staples, 32 Minn. 284, 286, 20 N. W. 225, 226:

"* * * amendments, which do not change the nature, purpose, or character of a corporation or its enterprise, but which are designed to enable the corporation to conduct its authorized business with greater facility, more beneficially, or more wisely, are *auxiliary* to the original object, and that, therefore, when one becomes a stockholder, he impliedly assents that such alteration or amendment may be made."

See, 75 U. of Pa. L. Rev. 585, 612. Consequently, a corporation organized under the cited sections may not only by amendment authorize the issuance of preferred stock, but also determine the preference rights of the holders thereof. In re Sharood Shoe Corp. (D. C.) 192 F. 945.

In conclusion, under the power to amend reserved by G. S. 1913, §§ 6185 and 6193 (§§ 300.45 and 300.54), defendant had the power by amendment to change both the par value of its preferred stock and the preference right thereof to receive dividends thereon. This included, as incidental thereto, the power to cancel accrued but undeclared dividends and to issue new preferred stock embodying the amendments as to a substitute for the old stock. Johnson v. Bradley Knitting Co. 228 Wis. 566, 280 N. W. 688, 117 A. L. R. 1276, *supra*.

■ Where, as here, there is neither a fund nor funds for the payment of dividends on preferred stock and there is no right to a dividend at all for lack of a declaration of one by the corporation's board of directors, there simply can be no "vested" right to such dividends. See, McNulty v. W. & J. Sloane, *supra*. As had been pointed out, the test is not whether the alleged right is "vested," but rather whether the statute reserves the right to amend or alter the preferred right of a preferred stockholder to dividends. If the statute reserves the power to amend or alter the right to dividends, there is no vested right to dividends, for the reason that whatever rights in this respect there might be are subject to the exercise of the reserved power to amend and alter. If, on the other hand, the statute does not reserve the power to amend or alter, there is no right of amendment or alteration, and the lack of such power is determinative of the right of the corporation to do so. The question, then, is one of statutory construction. Does the statute reserve such power? Midland Co-op. Wholesale v. Range Co-op. Oil Assn. *supra;* Davison v. Parke, Austin & Lipscomb, Inc. 285 N. Y. 500, 35 N. E. (2d) 618, *supra*. See, Note, 26 Minn. L. Rev. 387. Where there is a provision for payment of dividends on preferred stock at a stipulated rate before payment of dividends on other stock, the right to receive such dividends is a *preference* as that word is used in the statute. McQuillen v. National Cash Reg. Co. (D. C.) 27 F. Supp. 639 (affirmed [4 Cir.] 112 F. [2d] 877); Western Foundry Co. v. Wicker, 403 Ill. 260, 85 N. E. (2d) 722, 8 A. L. R. (2d) 878; Johnson v. Bradley Knitting Co. 228 Wis.

566, 280 N. W. 688, 117 A. L. R. 1276, all *supra*. Where, as here, the power is reserved to amend the articles of incorporation so as to include therein anything which a corporation of the same kind could include originally in its articles of incorporation and the corporation could have included in its articles either originally or by amendment a provision giving such "preference" to preferred stock as is deemed best, the corporation in the exercise of such reserved power may abolish the right of preferred stockholders to dividends on their stock, which have accrued merely by lapse of time and which have not been declared. Blumenthal v. Di Giorgio Fruit Corp. 30 Cal. App. (2d) 11, 85 P. (2d) 580; Western Foundry Co. v. Wicker, 403 Ill. 260, 85 N. E. (2d) 722, 8 A. L. R. (2d) 878; Anderson v. International M. & C. Corp. 295 N. Y. 343, 67 N. E. (2d) 573; Longson v. Beaux-Arts Apts. Inc. 290 N. Y. 845, 50 N. E. (2d) 240, all *supra;* Beloff v. Consolidated Edison Co. (Sup.) 81 N. Y. S. (2d) 440; Liebschutz v. Schaffer Stores Co. Inc. 274 App. Div. 847, 80 N. Y. S. (2d) 771; Arstein v. Robert Reis & Co. (Sup.) 77 N. Y. S. (2d) 303; McNulty v. W. & J. Sloane, 184 Misc. 835, 54 N. Y. S. (2d) 253, and Johnson v. Bradley Knitting Co. 228 Wis. 566, 280 N. W. 688, 117 A. L. R. 1276, *supra*. Apart from the power to include by amendment matter which the original articles might have contained, the provision of G. S. 1913, § 6193 (§ 300.54), to the effect that any corporation whose *amended* certificate of incorporation so provides may give such *preference* as it deems best to such preferred stock, would seem to reserve the power to determine by amendment not only the par value of preferred stock, but also its preference rights to dividends, accrued or to accrue.

In Delaware, New Jersey, and North Carolina the rule is contra, but their statutes differ substantially from ours. The cases from those states proceed upon the theory that the right to dividends accruing by lapse of time, even though undeclared, is a "vested" one. In some of these cases, such as Lonsdale Sec. Corp. v. International M. M. Co. 101 N. J. Eq. 554, 139 A. 50, the amendment or alteration operated to deprive preferred stockholders of the benefit of a substantial fund or profits available at the time thereof

for the payment of the dividends. The situation with respect to such accumulated profits, and the right of the stockholders thereto, was somewhat analogous to the one in Keough v. St. Paul Milk Co. 205 Minn. 96, 285 N. W. 809, *supra*. Most of these cases have been cited, analyzed, and disapproved. Hottenstein v. York Ice Mach. Corp. (3 Cir.) 136 F. (2d) 944; McQuillen v. National Cash Reg. Co. and Western Foundry Co. v. Wicker, both *supra;* McNulty v. W. & J. Sloane, 184 Misc. 835, 54 N. Y. S. (2d) 253. See, 26 Minn. L. Rev. 387. There is no occasion to repeat here what has been so well said in the authorities cited. The so-called *vested* rights were treated by the courts of Delaware as not being such in other cases where alteration thereof was permitted, as, for example, where there was a merger of a parent corporation with its wholly owned subsidiary and where there was a subsequent issuance of new preferred stock having superior preference rights to the old. Professor E. Merrick Dodd points this out in an article having the suggestive title: *Accrued Dividends in Delaware Corporations—From Vested Right to Mirage,* 57 Harv. L. Rev. 894.

The question for decision here does not involve the rights of preferred stockholders to a fund accumulated and available for the purpose of paying the stipulated dividends on their stock. As has been pointed out, there is no such fund here. The right of preferred stockholders to such a fund (where there is one) and the power of a corporation to amend and alter under reserved power to do so are different and separate. Perhaps in a particular case deprivation of the stockholders' right to share in the fund might constitute an invasion of their equitable rights to the fund and an abuse of corporate power, but otherwise it would not affect the power to amend and alter. While we suggest the question, we do not decide it and intimate no opinion with respect to it.

It is true that the power to amend and alter, unless restrained and circumscribed, may be abused. Because that is true, statutes have been enacted for the protection of nonassenting stockholders. Anderson v. International M. & C. Corp. and McNulty v. W. & J. Sloane, both *supra*. The Minnesota business corporation act, which

has not been invoked and consequently is not involved here, contains some such provisions. M. S. A. 301.37, 301.40, 301.44. See, Comment, 20 M. S. A. p. 203. It has been suggested that in order to afford adequate protection to nonassenting stockholders the whole matter should be regulated and administered by an administrative agency. McNulty v. W. & J. Sloane, *supra*.

In conclusion, we hold that the statutes (G. S. 1913, §§ 6185, 6193 [§§ 300.45, 300.54]) in effect when defendant was incorporated and when the amendment of the articles of incorporation was adopted reserved power to defendant to amend its articles in the respects which it did and that the amendment is valid. Because that is true, defendants are entitled to judgment and a reversal here.

Reversed with directions to enter judgment for defendants.

