Edith HONIGMAN, Individually and on behalf of all Class B Stockholders of the Green Giant Company, Appellant,

v.

GREEN GIANT COMPANY, a Minnesota Corporation, et al., Appellees.

No. 16939.

United States Court of Appeals Eighth Circuit.

Nov. 7, 1962.

John Sklar of Honigman, Miller, Schwartz & Cohn, Detroit, Mich., Maurice S. Binkow, Jonathan Sobeloff and John Sklar, of Honigman, Miller, Schwartz & Cohn, Detroit, Mich., Phillips & Gross, Minneapolis, Minn., on the brief, for appellant.

John J. McKasy, of Thompson, Hessian, Fletcher & McKasy, Minneapolis, Minn., John J. McKasy and Maurice A. Hessian, Minneapolis, Minn., on the brief, for appellees.

Before VOGEL and VAN OOSTERHOUT, Circuit Judges, and VAN PELT, District Judge.

VAN OOSTERHOUT, Circuit Judge.

This is a class action brought by Edith Honigman, owner of 1,570 shares of Class B non-voting common stock in Green Giant Company, a Minnesota corporation, against said company, its controlling shareholders, officers, directors and others, to upset a recapitalization plan conceived and proposed by some of the defendants and approved by the vote of all Class A stockholders and by the affirmative vote of 92.3% of the outstanding Class B stock [1] at a legally called stockholders meeting pursuant to notice, at which meeting appropriate amendments to the articles of incorporation were adopted to carry the plan into effect.

Jurisdiction, based upon diversity of citizenship and the requisite amount, is

1. 4,799 shares of Class B stock, consisting of 1.2% of such stock, voted against the proposed plan and amendments. All certificates of Class B shares voted against the plan and amendments except plaintiff's have been exchanged for the new voting stock.

established. The case was tried to Judge Nordbye. In his opinion, reported at 208 F.Supp. 754, Judge Nordbye sets out the pertinent evidence and the issues, and sound reasoning is set out in support of his conclusion that plaintiff is entitled to no relief. This is a timely appeal from the final judgment dismissing the complaint.

We will briefly summarize some of the relevant corporate history. Green Giant was incorporated in 1903 by 12 persons, including the father and uncle of defendant E. B. Cosgrove. Sixty-seven shares of voting stock were issued. Later 23 shares were retired, leaving a capital structure of 44 shares of voting stock, 26 shares of which were owned during all times here material by E. B. Cosgrove. Mr. Cosgrove became secretary of the company in 1914, general manager in 1918, president in 1929, and chairman of the board in 1954.

In 1923 the corporate articles were amended to leave voting rights exclusively in the 44 shares of Class A common stock and to create a preferred stock not here involved, and a Class B common stock which had the same equity and dividend rights as Class A common stock but no voting rights. Originally Class B stock was issued only to Class A stockholders. Up to 1929, both classes of stock were held by the same people in the same proportions. Soon thereafter Class B stock was sold to the public. At the time of the recapitalization here in dispute, in 1960, there were outstanding the 44 shares of Class A voting stock and 428,998 shares of Class B non-voting stock. The Class B stock was held by some 1250 investors. Mr. Cosgrove still owned his 26 shares of Class A stock and he and members of his family owned about 20% of the Class B stock.

Green Giant is a grower and canner of vegetables and food products. In 1914 the company's annual sales amounted to $7,000. The company prospered through the years under Cosgrove's management. In 1960 its sales amounted to $64,000,000 and its net worth exceeded $23,000,000.

Mr. Cosgrove was 72 years of age in 1960. He died after the trial. While there is no substantial evidence of any dissatisfaction with his management, some concern existed about the existing voting rights. In 1959 the board of directors employed Glore, Forgan & Co., Chicago investment bankers, to make a study of the corporation's capital structure and to prepare a report and make recommendations. Pursuant thereto, a plan was in due course presented and recommended. The plan was approved by the directors and was thereafter approved by separate votes of the Class A and Class B stockholders. The plan is summarized by the court as follows:

"Under this plan, Class A and Class B shares were to be exchanged for a new class of voting common stock. Each Class B shareholder was to receive one share of the new common stock for each share of the Class B stock. Each Class A shareholder was to receive ten shares of what is termed convertible common stock, each of which would be converted annually into one hundred new voting shares, and in this manner, after the confirmation of the plan and at the end of a ten-year period, the holders of 44 shares of Class A stock would receive 44,000 shares of the new common stock. Under the plan, the present Class B stockholders would have 49.37 per cent of the voting power upon its adoption, and over the ten-year period, the percentage in voting power yearly would increase until by the tenth year it would be 90.70 per cent. The participation of the Class A shareholders in the assets of the company under the plan would be increased from about .01 per cent to 9.3 per cent."

Plaintiff bases her attack upon the adverse judgment upon the following main headings:

"I. The recapitalization plan is illegal, unfair and inequitable in exacting without adequate consideration a huge premium for the grant-

ing of voting rights to the public Class B stockholders."

"II. The issuance of the bonus stock to the Class A shareholders was a violation of applicable Minnesota laws and statutes requiring adequate consideration, monetary valuation, and protection of preemptive rights."

"III. The disclosure to stockholders accompanying the proxy request was inadequate, misleading and unfair, and in violation of federal and state anti-fraud laws."

"IV. The majority vote elicited by defendants was binding neither upon the corporation, plaintiff, nor other B shareholders in view of the illegality of the plan as well as the inadequate disclosures incident to the proxy solicitation."

The plaintiff relies heavily on the much discussed view of Professor A. A. Berle that control is a corporate asset. It is claimed therefore that the dilution of the B shareholders' equity cannot be justified by the A shareholders' surrender of their exclusive control. The view was originally stated in Berle & Means, The Modern Corporation and Private Property, 244 (1932):

"[The power of control] is an asset which belongs only to the corporation; and * * * payment for that power, if it goes anywhere, must go into the corporate treasury."

This view is discussed in Berle, "Control" in Corporate Law, 58 Colum.L.Rev. 1212 (1958). At page 1220 he states:

"A third group of decisions dealing with the control function relate to benefits derived from its sale. These decisions point to a slowly emerging rule (by no means universally acknowledged) that, where stockholdings carrying control are sold, any identifiable portion of the consideration paid for the power-position over and above the value of the stock ex the control-power element belongs not to the control-seller but to the corporation or (perhaps) to all the shareholders ratably."

No authorities are cited by Professor Berle squarely supporting this broad contention. He urges that Perlman v. Feldmann, 2 Cir., 219 F.2d 173, 50 A.L.R.2d 1134, goes far in his direction. When fairly read, Perlman does not go to the extent of supporting the rule urged. Other legal writers dispute the validity of a rule that control should be considered a corporate asset. Hill, The Sale of Controlling Shares, 70 Harv.L.Rev., 986, 1006–1010, 1018; Note, Fiduciary Duties of Majority or Controlling Stockholders, 44 Iowa L.Rev. 734, 744–745.

■■■■ Minnesota law here controls. Plaintiff has wholly failed to demonstrate that the trial court committed any error in failing to follow Professor Berle's proposed rule. No Minnesota cases have been cited or found which indicate that the Minnesota court would follow such view. We have frequently held that we will accept the views of an able and experienced trial judge on doubtful questions relating to the law of his state unless we are convinced that they are erroneous. Transport Mfg. & Equip. Co. v. Fruehauf Trailer Co., 8 Cir., 295 F.2d 223, 227; Homolla v. Gluck, 8 Cir., 248 F.2d 731, 734.

■■ We are satisfied that plaintiff has wholly failed to demonstrate that the court's failure to apply the Berle rule, that corporate control is a corporate asset, misapplied or misinterpreted the applicable Minnesota law.

We have given full consideration to all contentions made by the plaintiff and have carefully considered the briefs and record. We believe that all of plaintiff's remaining contentions are completely answered by Judge Nordbye's well-reasoned opinion.

The trial court found it unnecessary to determine whether corporate directors are fiduciaries in the strict sense in the promotion of the recapitalization plan, but found it to be fair and reasonable to place the burden upon the defendants to show the fairness and validity of the

plan, "not only to the class of stockholders who hold no voting rights, but to the corporation as well."

The court, after analyzing and detailing the substantial supporting evidence, states:

> "After due consideration, the Court is satisfied that a fair analysis of all the circumstances justifies a finding that defendants have sustained the burden of proof in establishing that the premium shares issued to the Class A stockholders is commensurate with the benefit received by the corporation and that the plan is fair and reasonable to the Class B stockholders. The Court concludes that the consideration flowing to the corporation fairly satisfies any demands of the Minnesota statutes relied upon, as well as the basic principles of fair dealing required by equity."

The court likewise found upon the basis of substantial evidence that there had been a full compliance with the Minnesota corporate statutes, that the notice given of the stockholders meeting was not fraudulent, incomplete or misleading, and that there had been no violation of the Federal Securities Act or the Minnesota Blue Sky Laws. There is nothing in the record which challenges the validity of the ownership of the Class A stock carrying the exclusive voting rights. Class B stockholders at the time they acquired their stock knew or were charged with knowledge that exclusive voting rights rested in the Class A stock.

This case does not fall within the usual pattern of cases involving the transfer of corporate control by means of the sale of the majority stock. Here the voting rights were not transferred to outsiders but were given to all existing stockholders.

■ Minnesota law authorizes recapitalization by amendment of articles of incorporation. M.S.A. § 301.37. · See Sherman v. Pepin Pickling Co., 230 Minn. 97, 41 N.W.2d 571; 35 Minn.L.Rev. 90.

M.S.A. § 301.37, subd. 3(3) requires as a minimum the affirmative vote of at least a majority of any class of stockholders that might be adversely affected by recapitalization amendment. It is undisputed that Mr. Cosgrove neither individually nor in conjunction with the other Class A stockholders had control of anything approaching a majority of the Class B stock.

It is defendants' position that the court would have been justified in approving the recapitalization plan solely upon the basis of the approval thereof by all classes of stockholders as provided by statute. The trial court properly attaches significance to the vote of the Class B stockholders. It states:

> "[T]he Court cannot ignore the persuasive fact that the holders of 92.3 per cent of all outstanding Class B stock concluded that the plan was fair to them and likewise to the corporation. That fact speaks more persuasively than the arguments of those who attempt to theorize on unrealistic principles of so-called corporate democracy. No one contends that the Class B stockholders were not fully informed of the Class A stock control when they invested in the company stock, and so far as the charge of immoral and reprehensible conduct directed at the Class A stockholders is concerned, suffice it to say that their position in this proceeding must be judged by that which businessmen of ordinary prudence would have done under similar circumstances. The integrity of the Class A stock is not challenged here."

■ While there appears to be considerable merit to defendants' contention that the enactment of the recapitalization amendment strictly in accordance with the statute alone constitutes a sufficient basis for the dismissal of plaintiff's complaint, we prefer to base our affirmance upon the broader basis reflected by the trial court's opinion that no fraud or inequitable conduct was resorted to in consummating the amendment, and the

proposed plan was fair, equitable and beneficial both to the non-voting Class B stockholders and to the corporation.

Plaintiff has completely failed to demonstrate that the judgment appealed from was based upon any erroneous view of Minnesota law or that the court's findings upon which the judgment is based lack substantial evidentiary support. We affirm the case on the basis of the trial court's reported opinion.

Affirmed.