In the Matter of BANKERS TRUST COMPANY, Bankrupt.

BANKERS TRUST SAVINGS & LOAN ASSOCIATION, Appellant,

v.

Jack A. TRAVIS, Appellee.

No. 77-1302.

United States Court of Appeals, Fifth Circuit.

Feb. 6, 1978.

Rehearing Denied March 3, 1978.

John M. Grower, William L. Smith, Jackson, Miss., for appellant.

John A. Travis, Jr., Vardaman S. Dunn, Jackson, Miss., for appellee.

Before AINSWORTH, SIMPSON and MORGAN, Circuit Judges.

AINSWORTH, Circuit Judge:

In 1976 more than forty savings and loan associations in Mississippi, including Bankers Trust Savings & Loan Association, became insolvent, thus resulting in a crisis for thousands of depositors. At the same time, Bankers Trust Savings & Loan Association's holding company, Bankers Trust Company, likewise experienced severe financial difficulties. Complicated litigation followed which involved application of the federal Bankruptcy Act to a bankrupt corporation whose assets include all of the capital stock in a subsidiary which itself is an excluded entity from the provisions of the Bankruptcy Act. The present appeal raises the issue of whether the district court's amended order placing Bankers Trust Company in bankruptcy also improperly restricts the reorganization of Bankers Trust Savings & Loan Association. We believe that it does and accordingly reverse.

The parties to this action are extremely interconnected. Appellant Bankers Trust Savings & Loan Association was a wholly owned subsidiary of bankrupt Bankers Trust Company. While Bankers Trust Company's major asset was Bankers Trust Savings & Loan Association which had over $200,000,000 in deposits, Bankers Trust Company also owned all the stock in four smaller building and loan companies. In addition, Bankers Trust Company held 45.39% of the stock of American Savings and Loan Insurance Company. In the State of Mississippi a large number of state-chartered savings and loans were privately but not federally insured. American Savings and Loan Insurance Company insured many of these institutions, among them appellant Bankers Trust Savings & Loan Association.

In the spring of 1976 both Bankers Trust Company and Bankers Trust Savings & Loan Association suffered substantial financial impairments. The resources of American Savings and Loan Insurance Company were unable to cover all the losses to Bankers Trust Savings & Loan Association's depositors. In May 1976 both Bankers Trust Company and Bankers Trust Savings & Loan Association were placed under Mississippi state receivership with Robert G. Nicholas, Jr. being appointed as receiver of Bankers Trust Company and co-receiver for Bankers Trust Savings & Loan Association. Meanwhile numerous other privately insured savings and loan associations also experienced financial difficulties. In part these problems resulted from the undercapitalization of their common insurer, American Savings and Loan Insurance Company. Because the insurance company had been unable to protect fully the depositors of Bankers Trust Savings & Loan Association, depositors of other savings and loans, realizing their deposits were not fully insured, began to withdraw their funds.

This series of events created a potential financial disaster for many citizens of Mississippi. Over 150,000 persons were in danger of losing much of their life savings. Under the then applicable Miss.Code Ann. § 81–11–41 (1972), insolvent savings and loan institutions were required to appear before the Mississippi Savings and Loan Associations Board "to show cause why its charter should not be revoked, a receiver appointed, and its affairs wound up." The potential loss of millions of dollars of savings to numerous depositors would have had repercussions that might have severely damaged the overall state economy. After consulting with financial experts, Governor Finch in an address to a special session of the Mississippi Legislature on June 18, 1976 proposed a plan to minimize the disaster. In accordance with the plan, Miss.Code Ann. § 81–11–41 was amended to provide for delay in liquidation of the savings and loan associations and to provide for the appointment of a conservator whose function was to reorganize these institutions and to obtain federal insurance of deposits from Federal Savings and Loan Insurance Corporation. However, the new legislation provided that if reorganization of an institution was not substantially completed by April 1, 1977, liquidation would still be required as under the former law. On June 21, Robert W. Warren was named Conservator for over forty of these savings and loan associations, including the largest, Bankers Trust Savings & Loan Association.

The most difficult task facing the Conservator was reorganizing Bankers Trust Savings & Loan Association with Federal Savings and Loan Insurance Corporation insuring deposits. At the time Warren assumed his position, Bankers Trust Savings & Loan Association had a capital impairment of approximately $28,000,000. Bankers Trust Company, its sole shareholder, could not provide sufficient funds to rectify this deficit since Bankers Trust Company itself was in state receivership and needed over $4,000,000 to become solvent. Federal Savings and Loan Insurance Corporation would deny Bankers Trust Savings & Loan Association's application for federal insurance unless approximately $42,000,000 of new capital was raised to eliminate not only the current impairment of capital but also to satisfy the reserve requirements of the Federal Home Loan Bank Board. Depositors of the savings and loan institution were the only possible source for these funds. Under the Conservator's plan, between 20 and 25% of each depositor's account would be converted into new preferred stock at the rate of one share for each dollar of deposits converted. The preferred stock would have a liquidation preference of $1 per share plus any accumulated dividends and a 10¢ per share cumulative dividend. Each share of preferred stock would also be entitled to one vote. Warren assembled a group of experts to act as directors of the newly reorganized association. In order to maintain public confidence in the restructured institution no person associated with the old association, Bankers Trust Company, or any of Bankers Trust Company's other subsidiaries would be permitted to serve as a director. The plan was presented in writing to depositors and by a series of public meetings. Upon adoption of the plan, Bankers Trust Savings & Loan Association was to change its name to Depositors Savings Association.

The reorganization plan also contained a reserve for some pending claims against Bankers Trust Savings & Loan Association. The most important of these was Bankers Trust Company's claim to $4,500,000 which Bankers Trust Company contended was advanced to Bankers Trust Savings & Loan Association as withdrawable contributed capital or surplus. However, Bankers Trust Savings & Loan Association contends that the advance was a contribution to capital. Conservator Warren counterclaimed and sought to cancel the common stock owned by Bankers Trust Company, and also to recover $9,000,000 damages allegedly caused by Bankers Trust Company's mismanagement. Since Mississippi law grants depositors of a savings and loan priority over shareholders, see Miss.Code Ann. § 81–11–5 (1972), Warren took the position that the shareholders of Bankers Trust Savings & Loan Association are wiped out if they cannot replenish $28,000,000 of lost deposits. In addition, Warren complained of numerous acts by Bankers Trust Company which drained the subsidiary of its assets. Allegedly Bankers Trust Savings & Loan Association was required to pay excessive fees to the parent for a variety of administrative services and to enter into unfair leasing agreements. Also, it was alleged that on at least one occasion Bankers Trust Savings & Loan Association was compelled to merge with a recently acquired subsidiary of Bankers Trust Company which had liabilities significantly in excess of its assets.

Until December 16, 1976 all litigation occurring in this matter was in Mississippi state courts. On that date, however, Bankers Trust Company filed its voluntary petition for federal bankruptcy under the provisions of Chapter X (11 U.S.C. §§ 501–676). Because the parent company itself was not a savings and loan association, Bankers Trust Company, unlike Bankers Trust Savings & Loan Association, was eligible for federal bankruptcy. See 11 U.S.C. § 22. In its Pro Forma Statement of Financial Condition filed with the court at that time Bankers Trust Company listed the capital stock in Bankers Trust Savings & Loan Association among its assets but assigned the stock a zero value, indicating that Bankers Trust Company considered the stock worthless. Beginning on December 27, three days of hearings on this petition were conducted before District Judge Cox.

Attorneys for Bankers Trust Savings & Loan Association made an appearance in an effort to ensure that the federal bankruptcy of the parent company would not interfere with the state reorganization of the savings and loan association. On January 3, 1977, Judge Cox filed his opinion placing Bankers Trust Company in bankruptcy but explicitly prohibiting any interference with the reorganization of Bankers Trust Savings & Loan Association.[1] Jack A. Travis was appointed Trustee for Bankers Trust Company by order dated January 6, 1977.

On February 3, 1977, Travis informally requested that Judge Cox amend his order of January 6 so that the Trustee could more fully protect the estate of Bankers Trust Company. Over Conservator Warren's objections, Judge Cox modified his prior order with an amended order, dated February 4, which had the effect of enjoining the proposed plan of reorganization.[2] Since Warren had only until April 1 under Mississippi statutory law to complete substantially the reorganization, Warren immediately sought a stay of the order, which was denied by Judge Cox. This Court then granted a stay on February 8. A subsequent request to vacate the stay was denied.

Warren was thus able to present the plan of reorganization to the depositors of Bankers Trust Savings & Loan Association, who approved it. With this infusion of new capital, federal insurance for the remaining deposits was obtained and Bankers Trust Savings & Loan Association, now known as Depositors Savings Association, opened again for normal business. Thus state reorganization has successfully preserved 80% of their deposits for more than 67,000 residents of Mississippi. Further, the depositors hold preferred stock for the balance of 20% of their deposits. During oral argument counsel for Bankers Trust Company's Trustee conceded that "[Mr. Warren] has done an absolutely fabulous job in reorganizing [Bankers Trust Savings & Loan Association] . . . ."

Meanwhile the bankruptcy of Bankers Trust Company has continued. The bank-

---

1. The original opinion of the district court dated January 3, 1977 limited the Trustee as follows:

   The proper administration of this trust will be transferred to the Referee in Bankruptcy in this judicial district; and said Referee in Bankruptcy will be vested with the full power and authority to administer this trust estate of this debtor to conclusion without interfering with, or impeding or retarding to any degree, or to any extent the activities of Robert Warren, Conservator of the approximately sixteen subsidiaries savings and loan associations. Good faith is thus ascribed to the debtor (Bankers Trust Company) and it may file its voluntary petition in this case under Chapter X and it will be referred to the Referee in Bankruptcy for proper administration to conclusion.

2. The amended order of the district court dated February 4, 1977 states in part that:

   2. It is the declared intent of the Court that there shall not be interference by the Trustee of Bankers Trust Company with the lawful activities of the Conservator of Bankers Trust Savings and Loan Association, appointed pursuant to state statute, and that equally, there shall be no interference by the Conservator appointed under state law to administer the affairs of Bankers Trust Savings and Loan Association with the lawful activities of the Trustee appointed by this Court to administer the affairs of Bankers

   Trust Company, nor shall the said Conservator interfere with or alter or change in any respect the property rights of Bankers Trust Company or of its creditors, debenture holders, or bond holders, who are hereby declared to have a right to protection equal to the right of the creditors of Bankers Trust Savings and Loan Association.

   3. The Referee in Bankruptcy is vested with full jurisdiction and the full power and authority to fully and completely administer this estate to conclusion; and said Referee in Bankruptcy is vested with full jurisdiction and full power and authority necessary to be exercised to the end indicated, including but not limited to the right to consider and act upon any petition as may be filed by the Trustee herein designed to protect the property rights and interests of Bankers Trust Company, including the right to enjoin the Conservator appointed under state law and all those acting under his direction or in concert with him from proposing or implementing any plan for the reorganization of Bankers Trust Savings and Loan Association which could or would have the effect of diluting the voting rights incident to the capital stock of Bankers Trust Savings and Loan Association, owned by its parent, Bankers Trust Company, by means of the issuance of new preferred stock with voting rights or otherwise.

ruptcy court is scheduled to hear the claim by Bankers Trust Company against Bankers Trust Savings & Loan Association for the $4,500,000 allegedly advanced as withdrawable capital and the cross-claim by Bankers Trust Savings & Loan Association against Bankers Trust Company for $9,000,-000 damages allegedly resulting from Bankers Trust Company's control. Since the reorganized savings and loan association created a reserve for any liability resulting from this suit, the decision of those disputes will not prevent Bankers Trust Savings & Loan Association (now Depositors Savings Association) from reestablishing itself as a sound financial institution.

■ Judge Cox's amended order of February 4, the principal subject of this appeal, presents an unresolved conflict between the role of state and federal authorities in the bankruptcy of a company whose subsidiary is a state-chartered savings and loan association. Section 4 of the Bankruptcy Act states:

(a) Any person, except . . . [a] banking corporation or a building and loan association, shall be entitled to the benefits of this title as a voluntary bankrupt.

(b) Any natural person, except . . . a building and loan association, . . . or banking corporation, . . . may be adjudged an involuntary bankrupt . . . and shall be subject to the provisions and entitled to the benefits of this title. . . .

11 U.S.C. § 22. Accordingly, Bankers Trust Savings & Loan Association could only be reorganized under state law since it is neither entitled to the benefits of the Act nor subject to its provisions. Meanwhile Bankers Trust Company, which owned all of Bankers Trust Savings & Loan Association's stock, could and did seek the benefits of federal bankruptcy since it was not a banking or savings and loan institution.

■ Applying the Bankruptcy Act to bring Bankers Trust Company under its protection without interfering with Mississippi's right to reorganize Bankers Trust Savings & Loan Association requires delicate balancing. However, the amended order of the district court has consequences that are incongruent with the structure of the bankruptcy laws. The most glaring defect in this regard is the portion of the order stating that "[Bankers Trust Company's] creditors, debenture holders, or bondholders . . . are hereby declared to have a right to protection equal to the rights of the creditors of Bankers Trust Savings & Loan Association." Even apart from the district court's apparent misinterpretation of state law,[3] the court's position is untenable. The portion of the order quoted above attempts to allocate priorities among creditors of Bankers Trust Savings & Loan Association, an organization explicitly excluded from the provisions of the federal Bankruptcy Act. If any meaning is to be given to congressional exclusion of savings and loan associations from the Act, it must be that determination of rights among a savings and loan institution's creditors, a core function of bankruptcy, must be left to state governments. Any order to the contrary exceeds the district court's statutory authority.

The central issue in this suit is the authority of the district court to restrict the Conservator in the reorganization of a state-chartered savings and loan. The district court's amended order provided for the issuance of an injunction against "any plan for the reorganization of Bankers Trust Savings and Loan Association which could or would have the effect of diluting the voting rights incident to the capital stock of Bankers Trust Savings and Loan Association." The bankruptcy judge on February 7, 1977 issued an injunction which would have prevented Conservator Warren from implementing his plan.[4]

---

**3.** "Upon liquidation, share account members shall be first paid the value of their shares, if such funds are available, before any sums are paid to holders of stock shares." Miss.Code Ann. § 81–11–5(1) (1972) (current version at Miss.Code Ann. § 81–12–69(4) (1977) ).

**4.** In pertinent part the bankruptcy judge's order reads:

The Trustee for Bankers Trust Company contends that any reorganization of Bankers Trust Savings & Loan Association which affects the rights of its common stock is a proper subject for consideration in a federal bankruptcy proceeding. This contention is based on 11 U.S.C. § 511, which reads:

511. Exclusive jurisdiction over debtor and property

Where not inconsistent with the provisions of this chapter, the court in which a petition is filed shall, for the purposes of this chapter, have exclusive jurisdiction of the debtor and its property, wherever located.

The Trustee argues that since the stock of Bankers Trust Savings & Loan Association is the property of Bankers Trust Company any litigation affecting that stock is within the exclusive jurisdiction of the bankruptcy court.

■ Ownership of Bankers Trust Savings & Loan Association's stock cannot support Bankers Trust Company's interference with the reorganization of its subsidiary. As already mentioned, in its bankruptcy petition Bankers Trust Company listed the stock in Bankers Trust Savings & Loan Association as having no value. This fact is not difficult to understand since there is a $28,000,000 impairment of Bankers Trust Savings & Loan Association's capital.

Further, prior decisions involving bankruptcy of a parent corporation have noted the special nature of the property interest represented by stock in a subsidiary. The Second Circuit has held that a suit against a subsidiary does not become part of the parent's bankruptcy proceedings merely because the suit may reduce the value of stock in the subsidiary. See *In re Adolf Gobel, Inc.*, 2 Cir., 1936, 80 F.2d 849. In that case the debtor, Adolf Gobel, Inc., unsuccessfully attempted to enjoin a pending damage suit against the subsidiary for breach of contract. The court rejected this claim pointing to the distinction between ownership of stock and ownership of assets.

[Section 77B(c)(10) of the Bankruptcy Act] has no application in the instant case, for it is plain that the suit was not against this debtor nor was it a judicial proceeding to enforce any lien upon its estate. The assets of the Decker corporation [the subsidiary] were involved, not the Decker stock, which was part of the debtor's estate. . . .

This section does not authorize enjoining a creditor of a solvent and wholly independent subsidiary from prosecuting an action at law in the state court merely because its common stock is held by the debtor in reorganization proceedings. . . . [M]ere financial interest of a bankrupt estate in the outcome of litigation pending in the state courts does not authorize the issuance of an injunction against such prosecution. *In re Worrall*, 79 F.(2d) 88 (C.C.A.2); *In re Horton*, 102 F. 986 (C.C.A.8).

*Id.* at 852.

Nonetheless, Bankers Trust Company's Trustee contends that its right to vote Bankers Trust Savings & Loan Association's stock is property and dilution thereof by issuing additional voting shares (here the

(c) That Robert W. Warren, Conservator, and all other persons whomsoever, be enjoined effectively and forthwith to remove all provisions of the proposed plan of reorganization of Bankers Trust Savings and Loan Association purporting to issue preferred stock, having the effect of transfering the voting control from the common capital stock owned and held by Bankers Trust Company to any preferred or other stock to be issued under the plan for the reorganization of said association; and

(d) That Robert W. Warren, Conservator, and all other persons whomsoever, be strictly enjoined from taking any action or proposing or implementing any plan of reorganization

which would in any wise detract from, involve, or interfere with the rights vested in the Bankers Trust Company in bankruptcy by reason of the ownership and possession of all or any part of the 1,001,000 shares of the common capital stock of Bankers Trust Savings and Loan Association; and

(e) Enjoining any and all proceedings in any other Court or before any agency or tribunal, state or federal, purporting in any wise to void or cancel or affect, detract from, diminish, or interfere in any way with the ownership by Bankers Trust Company of said common capital stock or any of the rights and privileges flowing therefrom.

preferred stock shares) or by cancelling the common stock can properly be enjoined by a bankruptcy court. Although the right to control a corporation has been recognized as property in some contexts, *see, e. g., Honigman v. Green Giant Co.*, 8 Cir., 1962, 309 F.2d 667, we conclude that such voting rights do not afford Bankers Trust Company the right to bring a state savings and loan association, under reorganization under state law, within the jurisdiction of the federal bankruptcy court. Bankers Trust Savings & Loan Association had a $28,000,000 impairment of capital and its stock had a stated value of zero. Ownership of all its common stock cannot, under the circumstances here, be allowed to impede the state reorganization of Bankers Trust Savings & Loan Association.

■ Even if voting rights were property for purposes of this dispute, the provisions of 11 U.S.C. § 511 would still not permit the bankruptcy court to assume jurisdiction over modifications affecting Bankers Trust Savings & Loan Association's stock, since the exercise of such jurisdiction would be inconsistent with other provisions of the Bankruptcy Act, especially those which explicitly excluded savings and loan associations from the Act. Because state regulation was prevalent in this area Congress chose to allow these reorganizations to be conducted under state rather than federal law. *See Israel-British Bank (London) Ltd. v. Federal Deposit Insurance Corp.*, 2 Cir., 1976, 536 F.2d 509.

Similar exclusions of insurance companies have been interpreted as preventing orders which would have the effect of reorganizing an insurance subsidiary. In *In re Equity Funding Corp.*, C.D.Cal., 1975, 396 F.Supp. 1266, the court reasoned that the bankruptcy court must not assume jurisdiction over an insurance subsidiary.

By preserving state liquidation proceedings, Congress sought to prevent bankruptcy or reorganization courts from interfering with comprehensive state insurance regulations and with the rights of insureds protected by such regulations. *See In re Union Guarantee & Mortgage Co., supra; In re Supreme Lodge of the Masons Annuity, supra.* As the language of Section 4 suggests, Congress determined that interference with state insurance regulations would not occur as long as bankruptcy courts did not reorganize insurance companies or adjudge them to be bankrupts. To assure that this congressional intent is in harmony with the language of Section 4, as interpreted above, a bankruptcy court should consider the impact of its exercise of jurisdiction on state insurance proceedings and regulations when determining whether its action is tantamount to a reorganization of an insurance company.

*Id.* at 1275. Further, we conclude that to permit the blocking of state reorganization herein would be tantamount to imposing a federal reorganization which is clearly forbidden by the Act's exemption of savings and loan associations and inconsistent with the congressional scheme of the Bankruptcy Act.

Finally we must consider Bankers Trust Company's motion to dismiss the appeal for mootness as a result of developments since the amended order. In particular, Trustee Travis claims that by filing a petition for reclamation in the bankruptcy court, Bankers Trust Savings & Loan Association has subjected itself to the jurisdiction of the court and that since jurisdiction is the only issue raised by this appeal, the case is now moot. We disagree.

■ Although a reclamation petition does serve as consent to a bankruptcy court's jurisdiction, it does not amount to consent for the adjudication of totally unrelated counterclaims. *See* Collier, Bankruptcy Manual, ¶ 23.06[3] at 335 (2d ed. 1977). In *Daniel v. Guaranty Trust Co.*, 285 U.S. 154, 52 S.Ct. 326, 76 L.Ed. 675 (1932), the Supreme Court rejected a trustee's contention that a petition for reclamation of bonds fraudulently obtained by the bankrupt empowered the bankruptcy court to hear a suit over funds collected by the petition for the bankrupt in a separate transaction. The reclamation complaint of Bankers Trust Savings & Loan Association is not connect-

ed with the state reorganization because the exchange of deposits for preferred stock is independent of any claim of Bankers Trust Company to return assets improperly withdrawn from Bankers Trust Savings & Loan Association or of the claim against Bankers Trust Company for damages for mismanagement. The reclamation complaint of Bankers Trust Savings & Loan Association, now Depositors Savings Association, therefore does not provide consent to jurisdiction interfering with the reorganization of a state savings and loan association. Thus subsequent events have not rendered the controversy moot and therefore we must reverse the amended order below.

REVERSED.